United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

DAVID YEZEK and SHAWN FRAZER,

Plaintiffs,

v.

CHP OFFICER M. MITCHELL, et al.,

Defendants.

NO. C-05 -03461 TEH

ORDER GRANTING SUMMARY JUDGMENT IN PART AND DISMISSING STATE LAW CLAIMS

**INTRODUCTION**

This case arises out of the traffic stop of plaintiffs Shawn Frazer and David Yezek on August 24, 2004. Defendant California Highway Patrol officer M. Mitchell stopped the Plaintiffs for speeding on their motorcycles, and then photographed them because he believed they were "Hells Angels" before giving them their citations and releasing them. As set out below, the Court finds that although Plaintiffs have raised at least a triable issue of fact as to whether the stop was reasonable under the Fourth Amendment, the defendant officer is entitled to qualified immunity. The Court therefore GRANTS Defendant's motion for summary judgment on Plaintiffs' § 1983 claim. The Court declines to rule on Defendants' motion for summary judgment as to Plaintiffs' remaining state law claims, and instead DISMISSES these claims under 28 U.S.C. § 1367(c).

//

//

**FACTUAL BACKGROUND**

At approximately 9:30 p.m. on August 27, 2004, CHP officer Mark Mitchell stopped plaintiffs Shawn Frazer and David Yezek for speeding on their motorcycles. Mitchell entered highway 680 in his marked CHP patrol vehicle. Mitchell alleges that he observed two motorcycles change lanes and then accelerate away at high speed. (Plaintiffs testified that traffic in their lane was braking suddenly because of an obstruction, so they switched lanes and sped up to avoid other vehicles and move away from the obstruction). Mitchell accelerated after the Plaintiffs. Mitchell claims that he followed the Plaintiffs at 103 mph; Plaintiffs admit that they were speeding, but allege that they were going only 75 mph in a 65 mph zone. Mitchell paced the Plaintiffs for approximately one mile, then stopped them by activating his red lights.

Mitchell claims that after the traffic stop was initiated, but before the Plaintiffs had stopped, he noticed that Frazer had what he believed was the distinctive "Hells Angels" patch displayed on the back of his vest. As Mitchell was pulling the Plaintiffs over, he called dispatch, told them he was making a traffic stop on Hells Angels, and requested a cover unit. Once the Plaintiffs stopped, Mitchell saw that Frazer was indeed wearing the "Hells Angels" patch with the Hell's Angels logo and the word "California" at the bottom. On the front of Frazer's vest was a patch that said "Richmond." Both Frazer and Yezek were wearing bulky layered clothing that Mitchell believed could conceal weapons.

While he was waiting for another officer to arrive, Mitchell, in an effort to "break the ice," asked Plaintiffs if they were going to a "church meeting" – supposedly, in Defendant's

United States District Court
For the Northern District of California

terms, a term for "a meeting involving outlaw motorcycle club gang members." (Plaintiffs remember Mitchell asking if they were "late for church.") Plaintiffs did not respond. Mitchell asked Plaintiffs for their licenses and registration. When Frazer opened his saddlebags to get his papers, Mitchell looked inside the saddlebag with his flashlight and asked if Frazer was armed. Frazer responded that he was not. Yezek testified that he told Mitchell he was carrying a knife, but Mitchell just walked back to his car. Whether Mitchell ever did a pat-down search of the Plaintiffs is disputed: Mitchell testified he did a pat-down search of both of them after his backup arrived, while Yezek and Frazer remember that he never did a pat-down. At some point during the interaction, Mitchell also asked Plaintiffs who was running the Richmond chapter of the Hells Angels, "in an attempt to create a conversation." They did not respond.

Mitchell went back to his patrol car. He radioed in the license and registration information. He also had dispatch run a warrants check. Mitchell testified that at this point, he started writing the speeding tickets. While Mitchell was at his car, CHP officer Ocena arrived at the scene. The checks came back clear; dispatch informed Mitchell that neither Plaintiff had any warrants, but Yezek had guns registered to him and Frazer was a member of the Hells Angels.

Mitchell had decided to photograph Frazer and Yezek. Mitchell acknowledged that although he was done writing the tickets, he waited to give the tickets to the Plaintiffs until after he had photographed them, because he knew that once they signed the citations, they were free to leave. He went to the trunk of his car and got a camera. He called Frazer to the

patrol unit. Frazer said he did not want his photograph taken. Mitchell said "something to the effect that you'll – if you don't, I'm going to take you to jail." Mitchell Depo. at 65, 67.[1] Frazer remained calm, and did not curse, but continued to refuse to be photographed, and asked why his picture was being taken. Mitchell responded that he took pictures of people that he believed were gang members. Frazer said the Hells Angels was not a gang, it was a motorcycle club. Mitchell took the photograph.

Frazer walked back to Yezek and told him, "you're having your picture taken or you're going to jail." Yezek Depo. at 33. Mitchell called Yezek over to the patrol car. Yezek testified he told Mitchell something like "you've got to be kidding," although Mitchell testified Yezek made no comments that indicated he objected. Mitchell photographed Yezek.

After the photographs were taken, Mitchell gave the Plaintiffs citations for violation of Vehicle Code § 22349(A)(speed over 65 mph) and released them.

Frazer estimated that Mitchell spent approximately 10 minutes at the patrol car, and that the total time of the stop was 15 or 20 minutes. Yezek estimated the entire time of the stop was about 10 or 15 minutes.[2]

Plaintiffs contested the tickets. At the hearing on the citation in the Concord Superior Court, Mitchell testified that he saw the Plaintiffs dart across lanes and he "paced them" at a

---

1 At his deposition, Mitchell explained that he believed he had the authority to take the Plaintiffs to jail if they refused to be photographed because they would be obstructing a peace officer in the discharge of his duty in violation of Cal. Penal Code § 148(a).

2 At oral argument, Plaintiff's counsel stated that the CAD reports indicated the stop took 23 minutes in its entirety, a figure which Defense counsel did not dispute.

United States District Court
For the Northern District of California

hundred miles an hour for about a minute. Plaintiffs' counsel then cross-examined Mitchell. Mitchell admitted that he saw Frazer's Hells Angels jacket patch, that he asked about "church" and "who's running Richmond."[3] Mitchell testified that he threatened Frazer with jail unless he allowed Mitchell to take his picture. Frazer testified he changed lanes to avoid brake lights and sped up to a maximum rate of 75 mph. Once Mitchell said he wanted to photograph Frazer, Frazer asked if he could call his attorney because he "knew it was wrong," and Mitchell responded that he could call his attorney after the photograph or he could call his attorney from jail.

Plaintiffs' counsel argued that the entire purpose of the stop was to do an investigation (the photograph), and that the speeding was a pretext. The judge offered Mitchell an opportunity to present a rebuttal, but he testified only that there was no obstruction or braking on the freeway.

The judge stated he was "somewhat taken aback by some of the events that occurred, however I am going to take this matter under submission. I do have one question though and, and ... of your client Mr. Frazer. What were you wearing that evening in terms of helmet, jacket, attire?" Request for Judicial Notice, Exh. A at 13. Frazer responded he was wearing a leather vest brand new Hells Angels patch on the back. The court took the matter under submission. The Notice of Rendition of Judgment, issued on the same day, stated "you have been found not guilty of violating section CVC 22349A, speed over 65 mph."

---

[3] Plaintiffs' Request for Judicial Notice of the transcription of the January 5, 2005 Concord Superior Court hearing is GRANTED.

United States District Court
For the Northern District of California

**STANDARD**

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The court may not weigh the evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* at 322-23. However, on an issue for which its opponent will have the burden of proof at trial, the moving party can prevail merely by "pointing out to the District Court ··· that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. If the moving party meets its initial burden, the opposing party must then "set forth specific facts showing that there is a genuine issue for trial" to defeat the motion. Fed. R. Civ. Pro. 56(e); *Anderson*, 477 U.S. at 250.

//

//

United States District Court
For the Northern District of California

**ANALYSIS**

**I. Defendant Mitchell Is Not Collaterally Estopped From Claiming There Was No Fourth Amendment Violation**

Yezek contends Mitchell is collaterally estopped from claiming that there was probable cause for the stop because the Superior Court traffic commissioner found the plaintiffs not guilty of violating Vehicle Code § 22349(a). He is not.

Doctrines of *collateral estoppel* and *res judicata* apply in a § 1983 case to a state court judgment on a constitutional claim, assuming that the party against whom an earlier court decision is asserted had a full and fair opportunity to litigate the issue decided by the first court. *Allen v. McCurry,* 449 U.S. 90, 101 (1980). Federal courts "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Lance v. Dennis,* __ U.S. __, 126 S.Ct. 1198, 1202 (2006)(citations omitted). California law bars relitigation of an issue decided at a previous proceeding if

> (1) the issue necessarily decided at the previous [proceeding] is identical to the one which is sought to be relitigated; (2) the previous [proceeding] resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior [proceeding].
>
> It is implicit in this three-prong test that only issues actually litigated in the initial action may be precluded from the second proceeding under the collateral estoppel doctrine. [Citation.] An issue is actually litigated '[w]hen [it] is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.

*People v. Carter,* 36 Cal.4th 1215, 1240 (2005), *quoting People v. Sims* (1982) 32 Cal.3d 468, 484. Collateral estoppel can be applied "offensively" to preclude a defendant from

relitigating an issue the defendant previously litigated and lost only if the defendant had a "full and fair" opportunity to litigate the issue in the earlier proceeding. *Roos v. Red,* 130 Cal.App.4th 870, 880 (2005).

Few of these requirements are met here. First, the Fourth Amendment issue was not necessarily decided by the Superior Court. Plaintiffs clearly raised the Fourth Amendment issue by arguing the stop was simply pretext to search and photograph an alleged motorcycle gang member. However, the judgment of "not guilty," with no explanation, does not prove this claim was necessarily decided. There was conflicting evidence about how fast the Plaintiffs were going, and whether there was justification for any speeding: Plaintiffs said they sped up to 75 to avoid danger, while Mitchell said they were going 100 mph for no reason. While it seems likely that the dismissal was based on the Hells Angels issue, it could have been decided on factual grounds. *See also Borunda v. Richmond* 885 F.2d 1384, 1389 (9th Cir. 1988)(acquittal after trial does not necessarily establish whether probable cause for arrest existed).

Second, Mitchell was not a party to the traffic citation hearing or in privity with the state. Mitchell's interests as a police officer witness for the state and member of the criminal justice system were aligned with his interests here as a defendant: to show that Plaintiffs were speeding and that the stop complied with the Fourth Amendment. But privity is more than an alignment of interests. The Ninth Circuit and numerous other courts have held that police officers are not in privity under similar circumstances. *Davis v. Eide*, 439 F.2d 1077, 1078 (9th Cir. 1971); *Hardesty v. Hamburg Tp.,* 461 F.3d 646, 651 (6th Cir. 2006)("police

officer defendants in a § 1983 case are not in privity with the prosecution of a related criminal case and do not have a personal stake in the outcome of the criminal case."); *McCoy v. Hernandez,* 203 F.3d 371, 375 (5th Cir. 2000)(same); *Duncan v. Clements*, 744 F.2d 48, 51-52 (8th Cir. 1984); *Kinslow v. Ratzlaff*, 158 F.3d 1104, 1105-06 (10th Cir. 1998)(mere fact that the officers were interested in proving a state of facts which were presented in the criminal proceedings does not establish that the officers were in privity with any of the parties in the prior action); *Booker v. Ward*, 94 F.3d 1052, 1057 (7th Cir. 1996), *cert. denied*, 519 U.S. 1113 (1997).

Finally, it is not clear that Mitchell had a full and fair opportunity to litigate the matter at the traffic hearing. Plaintiffs argue that because Mitchell was handling the state's case, he had "tactical control" and a full and fair opportunity to litigate the issue. Mitchell had more opportunity to present a Fourth Amendment case than the officers in *Williams v. Kobel*, 789 F.2d 463 (7th Cir. 1986) and *Kraushaar v. Flanigan,* 45 F.3d 1040, 1050 (7th Cir. 1995), who were not permitted to testify an had no tactical control over the state's case in the criminal proceedings. Mitchell got to decide what to present, and he could have called witnesses. Mitchell Depo. at 89, 91. (It is not clear whether he could have cross-examined Frazer and Yezek. *Cf. Hernandez v. City of Los Angeles*, 624 F.2d 935, 937 (9th Cir. 1980)(party asserting collateral estoppel has burden)). Nonetheless, being delegated the state's prosecution of a speeding citation is not the same as defending a § 1983 suit. The absence of counsel was critical; while we do expect police officers to have a working knowledge of what the Fourth Amendment requires of them, Mitchell was not an attorney,

and he had neither his own counsel nor a prosecutor who could advise him on the Fourth Amendment issue.

On the facts of this case, Mitchell is not collaterally estopped from arguing there was no Fourth Amendment violation.

**II. Fourth Amendment Claim**

Defendants argue that under *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001), the photographs were permissible. In *Atwater*, the Supreme Court held that the Fourth Amendment does not forbid a warrantless arrest for a minor criminal offense, such as a misdemeanor seatbelt violation punishable only by a fine. Atwater was arrested for a traffic violation – driving without a seatbelt and other similar offenses. There was probable cause to believe she had violated the law. The court found that the arrest and processing, while inconvenient and embarrassing, did not violate the Fourth Amendment.

The Ninth Circuit summed up standards for probable cause for arrest in its recent decision *Tatum v. City of San Francisco*, 441 F.3d 1090 (9th Cir. 2006):

> A police officer has probable cause to arrest a suspect without a warrant if the available facts suggest a "fair probability" that the suspect has committed a crime. *See United States v. Valencia-Amezcua*, 278 F.3d 901, 906 (9th Cir. 2002); *United States v. Fixen*, 780 F.2d 1434, 1436 (9th Cir. 1986). An officer who observes criminal conduct may arrest the offender without a warrant, even if the pertinent offense carries only a minor penalty. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). If the facts known to an arresting officer are sufficient to create probable cause, the arrest is lawful, regardless of the officer's subjective reasons for it. *See Devenpeck v. Alford*, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) ("[a police officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause").

United States District Court
For the Northern District of California

*Id.* at 1094.

Here, Plaintiffs admitted they were going over the speed limit – 75 mph in a 65 mph zone. There is no question that there was probable cause for the initial traffic stop. Defendants argue that because there was probable cause to believe Plaintiffs broke the law, *Atwater* applies, and a full-fledged arrest would have been permissible – therefore the much less invasive photographs and citations were permissible. Plaintiffs' attempts to distinguish *Atwater* are misguided.[4]

Nonetheless, *Atwater* does not answer the Fourth Amendment question here. Mitchell could have arrested the Plaintiffs for the traffic violation, but he did not. Thus, *Atwater* does not provide the relevant Fourth Amendment limits here. *Cf. United States v. Childs* 277 F.3d 947, 953-54 (7th Cir. 2002)(*en banc)(* "The reasonableness of a seizure depends on what the police do, not on what they might have done").

Although the Plaintiffs' argument is no model of clarity, they apparently contend that the traffic stop ripened into a custodial arrest once Mitchell held Plaintiffs for a purpose other than the traffic stop (the photographs) and told them that they had to submit the photos or go

[4] First, Plaintiffs argue that Cal. Penal Code § 853.5, provides that officers may *only* cite and release for minor traffic violations; because Mitchell intentionally manipulated the process by giving the plaintiffs their citations only after he had photographed them, they were *de facto* arrested, not cited and released, in violation of the California statute. Plaintiffs then try to distinguish *Atwater* on the grounds that the arrest in *Atwater* was lawful under Texas law (the officer discretion to either cite and release for a traffic infraction, or to arrest), but the arrest here was unlawful under California law. But mere violation of state statutes does not render otherwise constitutional acts unconstitutional. *People v. McKay*, 27 Cal.4th 601, 609-614 (2002). Although Plaintiffs try to distinguish *McKay* on factual grounds, they never address the core constitutional argument.

United States District Court
For the Northern District of California

to jail. They argue that *this* "arrest" – separate from the initial traffic stop – required its own individualized probable cause.[5]

While this argument has surface appeal, it ignores the fact that this "arrest" took place entirely within the confines of a stop that ended with the Plaintiffs' departure. Plaintiffs offer no authority other than *Florida v. Royer*, 460 U.S. 491 (1983) and its progeny, which hold that a stop ripens into an arrest when a reasonable person would not feel free to leave. Without additional authority, this Court is not prepared to hold that motorists photographed and then released were *arrested*, such that separate probable cause is required.

Nonetheless, the Fourth Amendment requires that every seizure be reasonable. As the Ninth Circuit explained:

> The length and scope of detention must be justified by the circumstances authorizing its initiation. *See Terry v. Ohio,* 392 U.S. 1, 16, 19 (1968). Thus, when an officer has obtained sufficient information to issue a citation, a continued detention without probable cause to arrest for a crime is unreasonable. *United States v. Luckett*, 484 F.2d 89, 90-91 (9th Cir. 1973)(*per curiam*) (finding that an individual stopped for jay-walking may be detained "only the time necessary to obtain satisfactory identification from the violator and to execute a traffic citation"); *see also McKenzie v. Lamb*, 738 F.2d 1005, 1008 (9th Cir.1984) (holding that arrest requires "objective evidence which would allow a reasonable officer to deduce that a particular individual has committed or is in the process of committing a criminal offense"); *United States v. Jennings*, 468 F.2d 111, 115 (9th Cir. 1972) (holding that, after an initial investigative inquiry on the street is completed, continued detention of an individual for

[5] Plaintiffs also suggest that the photographs were a search incident to an unlawful arrest – unlawful because it violated Cal. Penal Code § 853.5. *See United States v. Cormier*, 220 F.3d 1103, 1111-1112 (9th Cir. 2000); *United States v. Mota*, 982 F.2d 1384, 1388 (9th Cir. 1993). However, photographing a person's face does constitute a search. *United States v. Emmett*, 321 F.3d 669, 672 (7th Cir. 2003), *citing United States v. Doe*, 457 F.2d 895, 898 (2d Cir.1972) ("[T]here is no 'reasonable expectation of privacy' about one's face."); *see also* C.J.S. Searches § 90 ("a law enforcement officer's photographing a defendant's face does not violate the defendant's Fourth Amendment rights"); *United States v. Taketa*, 923 F.2d 665, 677 (9th Cir. 1991)("Video surveillance does not in itself violate a reasonable expectation of privacy. … the police may record what they normally may view with the naked eye").

United States District Court
For the Northern District of California

> fingerprinting and photographing is constitutionally invalid without probable cause to arrest).

*Pierce v. Multnomah County, Or.,* 76 F.3d 1032, 1038 (9th Cir. 1996). These standards apply today to an investigative traffic stop. *See, e.g., United States v. Mendez*, 467 F.3d 1162, 1167 (9th Cir. 2006)(an officer cannot expand the scope of questioning or extend detention without additional reasonable suspicion); *United States v. Chavez Valenzuela,* 268 F.3d 719, 722, 728 (9th Cir. 2001)(scope of investigative detention "must be carefully tailored to its underlying justification... and may last no longer than is necessary to effectuate its purpose"; officer needs reasonable suspicion to prolong traffic stop detention after dispatch informs the officer that license and registration are valid and no warrants outstanding).[6]

Possibly in search of a bright-line rule, the Supreme Court has focused on whether the detention is prolonged. "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes,* 543 U.S. 405, 407 (2005). A "shift in purpose" to investigation for a separate offense does not require additional justification, provided a traffic stop is not prolonged. *Muehler v. Mena*, 544 U.S. 93, 101 (2005), *citing*

[6] *See also United States v. Holt*, 264 F.3d 1215, 1230 (10th Cir. 2001)(*en banc*) ("the Fourth Amendment reasonableness of a traffic stop based on probable cause must be judged by examining both the length of the detention and the manner in which it was carried out.…[A] traffic stop should be analyzed under *Terry*, regardless of whether the stop is based on probable cause or on some lesser suspicion. … even if 'an officer's initial traffic stop [is] objectively justified by the officer's observation of a minor traffic violation, his investigation nevertheless will be circumscribed by *Terry*'s scope requirement. … Even if we were to abandon *Terry* for this type of traffic stop, we are convinced we would still apply a scope requirement since, as indicated by the Supreme Court, the Fourth Amendment constrains the scope of all searches and seizures." (citations omitted)).

*Caballes*, 543 U.S. at 408. Thus, in *Caballes*, a drug dog sniff was permissible because it did not extend the lawful traffic stop, *id.* at 408, and in *Muehler*, questioning a woman detained during execution of a search warrant about her immigration status did not violate the Fourth Amendment or require additional justification because it did not extend the time of the detention. *Muehler*, 544 U.S. at 100-101. The Seventh Circuit used the same reasoning in *Valance v. Wisel*, 110 F.3d 1269 (7th Cir. 2001). There, police photographed the plaintiff during a traffic stop because he matched the description of a suspect in an unrelated crime, but the court rejected his § 1983 claim that the photograph violated the Fourth Amendment because plaintiff did not show he was detained for any extra time for the photograph. *Id.* at 1281.

Where a stop is prolonged, then, additional justification is required. In a structurally analogous case – where an officer stopped writing a traffic ticket in order to conduct a separate investigation – the district court of Alaska found that the Fourth Amendment required separate reasonable suspicion. *United States v. Turvin*, 442 F.Supp.2d 796 (D. Alaska 2006). Turvin (like Atwater) was stopped for failure to wear a seat belt. *Id.* at 799, 800. While the officer was writing a ticket, another officer arrived, and, on that officer's information, the first officer "stopped his ticket-issuing process and used a tape recorder solely for the purpose of asking Turvin about drugs and for a consent to search his vehicle." *Id.* at 799. The drugs found in the subsequent search were suppressed, following *Chavez-Valenzuela*, *supra*, because "police prolonged an otherwise lawful detention of Turvin and

United States District Court
For the Northern District of California

his passenger" with questioning when there was no reasonable suspicion to justify that questioning. *Id.*

Here, Plaintiffs argue they were detained for extra time for the photograph, in an investigation of the Hells Angels that was utterly unrelated to the initial traffic stop. At oral argument, Mitchell disputed this assertion, claiming that the photographs, like the warrant checks, were taken for officer safety reasons. At most, this raises a disputed issue of fact. If the Plaintiffs were detained solely for photographs unrelated to the traffic stop, Mitchell would need additional reasonable suspicion, beyond the probable cause he had to believe they had violated traffic laws, for the detention to be reasonable under the Fourth Amendment. He admits he had none. Mitchell Depo. at 74 (Mitchell had no basis to believe that Frazer had done anything illegal, other than speeding); *see also United States v. Mendez*, 467 F.3d 1162, 1172 (9th Cir. 2006)("gang membership alone is not sufficient" to create reasonable suspicion).

Even if the stop is viewed purely from a reasonableness perspective, Plaintiffs have raised a triable issue of fact as to whether the length and scope of the stop were reasonable. The photographs took an extra five to ten minutes. That amount of time might not rise to the level of "unreasonable" on its own. *Cf. United States v. Childs* 277 F.3d 947, 953 (7th Cir. 2002)(*en banc)*; *Allen v. City of Los Angeles*, 66 F.3d 1052, 1057 (9th Cir. 1995)(after a high speed chase, where plaintiff was intoxicated and with combative friend, pointing a gun at the plaintiff, cuffing him, and detaining him for 24 minutes in a police car not unreasonable). But here, Mitchell manipulated the encounter, taking the photographs before he gave the

Plaintiffs their citations, because he knew he was permitted only to cite and release them under state law. *Cf. Bingham v. City of Manhattan Beach*, 931 F.3d 939 (9th Cir. 2003)("[i]n evaluating a custodial arrest executed by state officials, federal courts must determine the reasonableness of the arrest in reference to state law governing the arrest"). Finally, Mitchell's threat to jail the Plaintiffs if they refused to have their photographs taken (with the circular reasoning that they would be interfering with his ability to take the photograph) could be viewed as patently unreasonable.

Nonetheless, the Court finds that even if Plaintiffs were able to prove a Fourth Amendment violation, Defendant Mitchell is entitled to qualified immunity. Under the doctrine of qualified immunity, even if a constitutional violation occurred, government officials are immune from liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Although Plaintiffs argue that the Fourth Amendment standard was clearly established,[7] the Supreme Court's decision in *Atwater* has altered the legal landscape to some degree, and the court finds it was not clearly established that, in the course of a traffic stop based on probable cause, Mitchell could not prolong the stop to take the photographs, and Mitchell could have reasonably believed the photographs were lawful. *See Saucier v. Katz*, 533 U.S. 194, 202, 205-07 (2001). Some Courts have held that since *Atwater,* arrested persons do *not* have to be released as quickly as possible, although detentions must remain reasonable. *United States v. Childs* 277 F.3d at

---

7 Plaintiffs also argued at the hearing that California law governing citations for traffic infractions was clearly established. But the "clearly established" prong of the qualified immunity inquiry refers to the federal right asserted under 42 U.S.C. § 1983, not to state law.

United States District Court
For the Northern District of California

952-54; *see also United States v. Brigham*, 382 F.3d 500, 506 n.4 (5th Cir. 2004)(*Childs* held that *Terry* standards do not apply to stop supported by probable cause). Because no Ninth Circuit case has directly addressed the impact of *Atwater* on reasonableness requirements for a traffic stop, under the circumstances of this case, Mitchell is entitled to qualified immunity.

**III. State Law Claims**

Defendants moved for summary judgment in a cursory fashion on Plaintiffs' state law claims (false imprisonment, defamation and invasion of privacy, and Cal. Civil Code § 52.1 and 52). Plaintiffs failed meaningfully to oppose the Defendants' motion for summary judgment. However, the Ninth Circuit has "repeatedly held that it is error to grant a motion for summary judgment simply because the opponent failed to oppose." *In re Rogstad*, 126 F.3d 1224, 1227 (9th Cir. 1997).

The Court declines rule on Defendants' motion as to these claims, or to continue to exercise jurisdiction over Plaintiffs' remaining state law causes of action. Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction if

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, [or]
> (3) the district court has dismissed all claims over which it has original jurisdiction.

*See also Executive Software N. Am. v. United States Dist. Court*, 24 F.3d 1545, 1555-59 (9th Cir. 1994). Here, the state law claims not only predominate, they are all that remain of the case after the Court's grant of summary judgment on the § 1983 claim. The Court finds that the "values of economy, convenience, fairness and comity," *id.* at 1556, will be best served by allowing California courts to decide the state law claims. The statute of limitations on

United States District Court
For the Northern District of California

state law claims is tolled while those claims are pending in federal courts and "and for a period of 30 days after [they are] dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d); *see also Okoro v. City of Oakland*, 142 Cal.App.4th 306, 310-311 (2006)(same). Accordingly, Plaintiffs' state law claims are DISMISSED pursuant to 28 U.S.C. § 1367(c).

**CONCLUSION**

Summary Judgment as to Plaintiffs' Cause of Action under 42 U.S.C. § 1983 is hereby GRANTED. Plaintiffs' remaining state law causes of action are hereby DISMISSED pursuant to 28 U.S.C. § 1367(c).

**IT IS SO ORDERED.**

DATED: January 5, 2007

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT